**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| PRO CON, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:10-cv-185-GZS |
| | ) | |
| INTERSTATE FIRE & CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. As explained herein, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment (Docket # 18) and DENIES Defendant's Motion for Summary Judgment (Docket # 20).

## I.    LEGAL STANDARD

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the

applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, -- F.3d --, No. 09-2614, 2011 WL 1447743, at *2 (1st Cir. Apr. 15, 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

The above-described "standard is not affected by the presence of cross-motions for summary judgment." Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005)

(citation omitted). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted); see also Alliance of Auto. Mfrs., 430 F.3d at 34 ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof.").

## II.    FACTUAL BACKGROUND

Construing the record in accordance with the just-described standard, the Court finds the following undisputed facts:

### A.  The Bowdoin Project & the Pro Con/Canatal Subcontract

Plaintiff Pro Con, Incorporated ("Plaintiff" or "Pro Con")—a construction company incorporated in the State of New Hampshire and with a principal place of business in Manchester, New Hampshire—was the general contractor for a hockey rink construction project for Bowdoin College in Brunswick, Maine (the "Bowdoin Project"). In the Fall of 2007, Pro Con entered into a written subcontract with Canatal Industries Inc. ("Canatal")—a structural steel company and a Canadian corporation with its principal place of business in Quebec, Canada (hereinafter the "Pro Con/Canatal Subcontract"). (See Docket #s 1-2 to 1-4.) The Pro Con/Canatal Subcontract stated that the scope of the subcontract would generally encompass all of the structural steel work for the Bowdoin Project.[1] Under this agreement, Pro Con obligated Canatal to procure and maintain in force with respect to the Bowdoin Project commercial general

_____
[1] Specifically, the Pro Con/Canatal Subcontract states that: "This contract includes any and all the necessary and/or required labor, materials, safety provisions, safety equipment, supervision, layout, hoisting/rigging/handling of materials, appurtenances, equipment, etc. to completely furnish and install all work associated with the *Structural Steel scope* of work … ." (Docket # 1-3 at PageID # 23 (emphasis in original).)

liability insurance in the amount of $1,000,000 per occurrence with Pro Con and Bowdoin College named as additional insureds on the policy. (See Docket # 1-4 at PageID # 73.)[2]

## B. The Canatal/CCS Subcontract

Canatal, in turn, subcontracted with CCS Constructors, LLC ("CCS")—a crane services and rental company incorporated in the State of Vermont with a principal place of business in Morrisville, Vermont—for the structural steel erection work for the Bowdoin Project (hereinafter the "Canatal/CCS Subcontract"). (See Docket # 19-1 at PageID # 173 to PageID # 206.) Pursuant to the Canatal/CCS Subcontract, effective as of November 22, 2007, CCS was obligated to secure general liability insurance coverage naming Canatal, Pro Con and Bowdoin College as additional insureds. Specifically, in an Exhibit entitled "Insurance Requirements," the Canatal/CCS Subcontract provides as follows:

> Erector [CCS] shall, at all times, maintain and keep in force during the term of this Agreement insurance in the forms and with limits to satisfy both the requirements listed in this Exhibit A [including Commercial General Liability Insurance] and those specified by other Contract Documents.
> …
> [CCS] shall provide [Canatal] with certificates of insurance evidencing the required insurance coverage before [CCS]'s work under this agreement is begun.
> …
> All policies must include a Waiver of Subrogation in favor of [Canatal].
>
> [Canatal], the General Contractor [Pro Con] and the Owner and other entities as may be reasonably requested are to be included as additional insured under the Commercial General Liability insurance policies as well as under Umbrella

---

[2] In Article VIII of the Pro Con/Canatal Subcontract, Canatal also specifically agreed to "have a direct liability for the acts of his employees, agents, suppliers, and subcontractors" and to "defend, indemnify and hold [Pro Con] harmless from and of any and all costs, damages and liabilities arising out of or relating to damages or injuries to, from or caused by his employees, agents, supplies and subcontractors." (Docket # 1-2 at PageID # 12.) Article X(3) further states: "To the fullest extent permitted by law, [Canatal] shall defend, indemnify and hold harmless [Pro Con] … from and against all claims, damages, losses and expenses, arising out of, resulting or relating to the performance of the Work, including, without limitation, all claims, losses and expenses arising out of or relating to injuries to [Canatal]'s employees, and the employees of his subcontractors and suppliers, while on or about the Site whether or not same is caused in part or in whole by a party indemnified hereunder. … The indemnification obligation of [Canatal] under this Subsection 3 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for [Canatal] under Worker's Compensation Acts, disability benefit acts or other employee benefit acts and [Canatal] waives any defenses raised by statutory employer immunity under such acts." (Id. at PageID # 13.)

Excess Liability insurance which shall be on a primary and non-contributing basis and must be written as follows: "[Canatal] is named additional insured as respects of all operations performed by or on behalf of the named insured for the certificate holder."

(Id. at PageID # 186-87.)

The Canatal/CCS Subcontract additionally provides at Article 1.3 that the subcontract "shall not be construed to create a contractual relationship of any kind … between the General Contractor [Pro Con] and the Subcontractor [CCS], or … between any persons or entities other than [Canatal and CCS]." (Id. at PageID # 174.) Article 2.1 provides that CCS is bound by the subcontract and "Prime Contract documents" (i.e., the contract between Bowdoin College and Pro Con) as applicable to the subcontract work, but to the extent that the contracts conflict, the subcontract terms will control. (See id.)

## C. The Interstate Policy

CCS obtained the required commercial general liability insurance policy through Defendant Interstate Fire and Casualty Company (hereinafter "Defendant" or "Interstate")—a foreign insurer authorized to do business in the State of Maine. Specifically, on or about October 1, 2007, Interstate issued to CCS a Commercial General Liability policy numbered NGL 1000049 effective from the date of issue through October 1, 2008 (hereinafter the "Interstate Policy"). (See Docket # 19-7.) The Interstate Policy, under which CCS is the sole Named-Insured, provided limits of $1,000,000 per occurrence with $2,000,000 in the general aggregate with a $10,000 per occurrence deductible for bodily injury and property damage.

Attached to the Interstate Policy are a number of industry standard form endorsements that modify the policy by changing the coverage afforded under the policy. Most relevant here, the Interstate Policy contains an endorsement entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION." (Id. at

PageID # 355.) Rather than requiring that an additional insured be specifically named in the Interstate policy, this Additional Insured Endorsement states, in pertinent part:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SCHEDULE
>
> <u>Name of Additional Insured Person(s) Or Organizations</u>:   Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.
>              …
> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>          1**.** Your acts or omissions; or
>          2. The acts or omissions of those acting on your behalf;
> In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(<u>Id</u>. (hereinafter the "Interstate AIE" or "PageID # 355").)

Along with the Interstate AIE, the Interstate Policy also contains an endorsement entitled "AMENDMENT OF OTHER INSURANCE CONDITION – PRIMARY INSURANCE FOR AUTOMATIC STATUS ADDITIONAL INSURED," which provides:

> THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> If required under a written "insured contract" with you, paragraph a. Primary Insurance in SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance is amended by adding the following paragraph:

Not withstanding the foregoing, the insurance afforded to any person or organization who has been added to this policy by an Automatic Status Additional Insured Endorsement is primary and non-contributory insurance, but only as respects "bodily injury" or "property damage" liability arising out of your sole negligence in performance of "your work" after the effective date of this policy under a written contract between you and such person or organization that requires you to maintain primary and non-contributory insurance and to include such person or organization as an additional insured thereunder.

All other terms and conditions of this policy remain unchanged.

(Id. at PageID # 416 (hereinafter the "ICB 8016 Endorsement" or "PageID # 416").)  The

Interstate Policy also contains an endorsement that modifies the definition of an "insured

contract" to mean:

f.  That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Id. at PageID # 401.)

**D.  The Certificate of Liability Insurance**

On or about November 14, 2007, an agent from HRH Northern New England produced

and signed a Certificate of Liability Insurance for the Interstate Policy (hereinafter the "COI").

(See Docket #1-5.)  Listing CCS as the "Insured" and identifying Pro Con as the "Certificate

Holder," the COI additionally provides, in pertinent part, that: "[Pro Con], Bowdoin College, and

[Canatal] are included as Additional Insureds on a primary basis but only with respect to

Liability arising out of CCSs (sic) operations performed for that insured."  (Id. at PageID # 84.)

The COI also includes the following caveat:  "This certificate is issued as a matter of information

only and confers no rights upon the certificate holder.  This certificate does not amend, extend or

alter the coverage afforded by the policies below." (Id.)  This COI was produced by Interstate on or about December 23, 2010, in its response to Plaintiff's request for production of documents.

### E.  The Accident & Underlying Litigation

On December 5, 2007, Stephen E. Williams—a CCS employee and resident of the State of Vermont—was injured when "he slipped and fell due to tarps covered with snow" at the Bowdoin construction jobsite.  (Williams Compl. (Docket # 1-1) ¶4.)  Williams began working at the Bowdoin Project in November of 2007 as a crane operator performing rigging work, laying out the steel to be erected on the ground, organizing, labeling, marking, and doing labor work to help with anchor bolts.  In the course of this work, Williams slipped on plastic insulating blankets installed by Pro Con around the perimeter of the building to prevent frost issues. Following Williams' accident, on December 10, 2007, Terry Carpenter, CCS's superintendent on the Bowdoin Project, sent Pro Con a letter reiterating what he characterized as a prior request that the frost blankets covering the building perimeter in CCS's work area be removed in order to prevent further injuries.  (See Chase Dep. (Docket # 28-3) at PageID #s 1475-76; see also id. at PageID # 1474 (Carpenter's same day accident report).)

Alleging that Pro Con failed to maintain the Project premises in a reasonably safe condition, Williams commenced suit against Pro Con in the Cumberland County Superior Court in June 2009.  The underlying complaint in the state case, captioned Williams v. Pro Con, Inc. v. Canatal Industries, Inc. v. CCS Constructors, Docket # CV-09-360, contains two causes of action against Pro Con for premises liability and negligence (hereinafter the "Williams Complaint"). (Williams Compl. at PageID #s 8-9.)  Williams alleges that he sustained permanent personal injuries and lost earning capacity as a result of the accident.[3]  Pro Con subsequently filed an

---

[3] Williams claimed and collected workers' compensation from CCS in Vermont based on the same injury for which he is seeking compensation in the underlying action.

answer to the Williams Complaint alleging comparative negligence on the part of Williams. Additionally, Pro Con filed a third-party action against Canatal (claiming that Canatal is obligated to indemnify Pro Con based upon their contract as well as common law indemnification)[4] and a fourth-party action against CCS (alleging that CCS agreed to indemnify Canatal and contracted away workers' compensation immunity in its subcontract with Canatal).[5]

### F. Pro Con's Tender

On or about October 13, 2008, Deborah Holland of AIG Domestic Claims, Inc.—the domestic claims administrator for American International Group, Inc. ("AIG") and Pro Con's general liability carrier—sent a certified letter on behalf of Pro Con to CCS tendering the Williams' claim and asking CCS to forward the request to its general liability carrier. (See Blecker Aff. Ex. B (Docket # 21-3).) Interstate received AIG's tender from CCS and subsequently gathered information connected with the Williams claim including accident reports, witness statements, Workers' Compensation claim materials, subcontracts, communications between CCS and Pro Con, and the Interstate Policy. By letter dated January 12, 2009, Interstate rejected AIG's tender on behalf of Pro Con, stating that its "investigation has confirmed that the accident was not 'caused in whole or in part' by the acts of CCS," and as such, that Pro Con "would not be considered an additional insured in this matter under this policy." (Blecker Aff. Ex. F (Docket # 21-7) at PageID # 770.) Interstate "maintain[ed]" denial of AIG's tender on behalf of Pro Con by letter dated March 31, 2009. (Blecker Aff. Ex. I (Docket # 21-10).)

---

[4] Canatal moved for summary judgment arguing that Vermont Workers' Compensation law applied to Williams' claims. In its motion, Canatal claimed that under Vermont law, Pro Con is Williams' statutory employer and immune from suit, and that because Pro Con's claims against Canatal are based on indemnity, no claims would remain against Canatal in the underlying action.

[5] In response, CCS raised, in part, the affirmative defense of workers' compensation immunity.

On May 17, 2010, Pro Con brought a declaratory judgment action against Interstate in this Court alleging that Pro Con is an additional insured under the Interstate Policy and "seeking a determination and enforcement of [Defendant] Insurer's contractual obligation to defend and indemnify Plaintiff with respect to claims asserted by [Williams]." (Compl. (Docket # 1) at PageID # 1.) On July 7, 2010 Interstate filed its Answer to Plaintiffs' Complaint denying the material allegations of the Complaint and asserting defenses to coverage pursuant to the Interstate Policy. (See Answer (Docket # 11).)

Prior to December 1, 2010, Canatal assumed Pro Con's defense in the Williams action. At some point, the underlying litigation was stayed pending results of mediation and ongoing settlement negotiations.

## III.    DISCUSSION

Plaintiff now moves for summary judgment seeking declarations that: (1) it is an additional insured under CCS's Interstate Policy (Count I); (2) Defendant has a duty to defend Pro Con in the underlying state litigation (Count I); and (3) Plaintiff is entitled to be reimbursed with a money judgment for attorneys' fees, costs and disbursements incurred by Plaintiff to date in connection with the underlying state claim and in the prosecution of this Complaint (Count II). Conversely, Defendant moves for summary judgment seeking a declaration that Plaintiff is not an additional insured under the policy at issue (Count I); that in any event, it owed no duty to defend or indemnify Pro Con (Count I); and that Plaintiff is not entitled to a judgment awarding damages (Count II). The Court addresses each question in turn below.

*1. Count I: Was Pro Con an Additional Insured under the Interstate Policy?*

"In a typical duty-to-defend case, the terms of the insurance policy are well settled such that the dispute focuses on the language of the complaint" and whether "the complaint can be read in such a way as to obligate the insurers under the policy." Boise Cascade Corp., Inc. v. Reliance Nat'l Indem. Co., 99 F. Supp. 2d 87, 99 (D. Me. 2000).[6] Here, however, Defendant disputes that Pro Con was an additional insured under the Interstate Policy at issue. Thus, before it is entitled to a determination of the duty to defend, Pro Con must first establish at the outset that it qualifies as an additional insured. Id. at 99-100 (determining that the Court should not reach the pleadings comparison test where it had not yet been established whether the named insured's carrier was the insurer of Boise).

Thus, the Court turns first to the "threshold issue" as to whether Defendant is an insurer of Plaintiff. Id. at 99. The instant contract dispute centers on the language of the Interstate AIE, which provides:

> Name of Additional Insured Person(s) Or Organizations: Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

(PageID # 355.) In moving for summary judgment, Defendant asserts that the plain language of the Interstate AIE specifically restricts automatic status as an additional insured to entities that have entered into a direct contractual relationship with CCS, the named insured. Here, it is undisputed that there was an intermediary step—that is, it was CCS and Canatal, *not* Pro Con,

---

[6] The parties agree that Maine substantive law applies to the issues in this case. Under Maine law, "an insurer's duty to defend is decided by comparing the allegations in the underlying complaint with the provisions of the insurance policy to determine whether the complaint shows a possibility that the liability claim falls within the insurance coverage." Wright-Ryan Constr., Inc. v. AIG Commercial Ins. Co., Civ. No. 08-414-P-H, 2009 WL 4508443, at *4 n.3 (D. Me. Nov. 27, 2009) (citing Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1352 (Me. 1996)). It is a question of law as to whether an insurer owes its insured a duty to defend. Bucci v. Essex Ins. Co., 393 F.3d 285, 290 (1st Cir. 2005) (quoting Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998)).

which agreed in writing that Pro Con was to be added as an additional insured; Pro Con was not a party to that contract.[7] Thus, because CCS and Pro Con never *directly* "agreed in writing in a contract or agreement that [Pro Con] be added as an additional insured on [CCS's] policy," Defendant argues that Pro Con is not an additional insured under the plain terms of the Interstate AIE.

In making this argument, Defendant cites to a recent case out of the Eastern District of Louisiana, <u>Venable v. Hilcorp Energy Company, Inc.</u>, Civ. No. 08-5198, 2010 WL 1817757 (E.D. La. Apr. 29, 2010), in which the court read an insurance policy's additional insured provision as requiring privity of contract between the named insured and the party asserting additional insured status. Similar to the facts presented here, in the <u>Venable</u> case, the insurance company asserted that the "HTK Defendants are not additional insureds under the policy because their rights against Greene's [Energy Co.] stem from their agreement with Hilcorp—… an agreement to which Greene's was not a party." <u>Id</u>. at *3. In <u>Venable</u>, the Additional Insured provision at issue stated:

> [W]here required by written contract, an (sic) person, firm or organization is included as Additional Insured but only in respect of liability for Bodily Injury … arising out of operation performed by or on behalf of the named Insured *under written contract with such additional insured* and then, subject to the terms, conditions, exclusions and Limits of Liability of this policy, only to the extent required under said written contract.

<u>Id</u>. (emphasis supplied). The <u>Venable</u> Court held that, given the specific language of the additional insured endorsement, a party which did not directly enter into a written contract with the named insured, but only was connected to the insurance policy at issue via a "middle-man" entity, "cannot be additional insured." <u>Id</u>. at *1, *3.

---

[7] Indeed, as Defendant points out, Article 1.3 of the Canatal/CCS subcontract specifically provides that the subcontract shall not be construed to create a contractual relationship between the General Contractor (i.e., Pro Con) and CCS. (<u>See</u> PageID # 174.)

Plaintiff counters that the a plain reading of the Interstate AIE does not mandate privity of contract between CCS and any additional insured, and the language of the subcontract between CCS and Canatal makes clear that CCS agreed in writing to add Pro Con as an additional insured—which is all that is required. Plaintiff also argues that, in any event, on November 14, 2007, an Interstate Certificate of Liability Insurance was issued to Pro Con designating Pro Con as an additional insured—which, Plaintiff argues, is in itself sufficient evidence that Pro Con was added as an additional insured. Correspondingly, Plaintiff asserts that by virtue of the issuance of this COI, Defendant is precluded from denying additional insured status to Pro Con based upon the doctrines of waiver and estoppel.

As in fact evidenced by the very case exclusively relied upon by Defendant, Plaintiff has the better of the argument. In holding that the insurance policy at issue required privity of contract, the <u>Venable</u> Court repeatedly highlighted the specific language contained in the additional insured endorsement that compelled its decision:

> The Court agrees that the HTK Defendants are not additional insureds. The sole mechanism pursuant to which a third party becomes an additional "insured" under [the insurance] policy is via operation of the [AIE. The AIE], while not a paragon of clarity, does require that a party have contracted directly *with the Named Insured* in order to attain additional insured status. The Named Insured is the party whose name appears on the policy's declarations page and that party is Greene's. The HTK Defendants did not enter into a written contract *with Greene's* so they cannot be additional insureds.

<u>Venable</u>, 2010 WL 1817757, at *3 (emphasis supplied).

Here, by contrast, the Interstate AIE at issue does not include anything like the phrase "under written contract *with such additional insured.*" Rather, the Interstate AIE states only: "Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in *a contract or agreement* that such person or organization be added as an additional insured on your policy." (PageID # 355 (emphasis

supplied).) In short, the AIE is missing a pivotal "*with you*" or even "*with each other*" after the phrase "agreed in writing in a contract or agreement." Tellingly, in a different endorsement to the very same Interstate Policy, Defendant uses exactly this language: "If required under a written 'insured contract' *with you*, paragraph a. Primary Insurance in Section IV … is amended" as described. (See Interstate Policy at PageID # 361.) Thus, the <u>Venable</u> case is distinguishable.

Instead, the Court turns back to what the Interstate AIE at issue here did say: there simply must be "a [written] contract." Under Maine law, "unambiguous provisions contained in insurance policies are to be interpreted as written, giving force to their plain meaning." <u>Acadia Ins. Co. v. Allied Marine Transp. LLC</u>, 151 F. Supp. 2d 107, 126 (D. Me. 2001); <u>see also</u> <u>Eddy v. Vanguard Car Rental USA, Inc.</u>, Civ. No. 09-313-P-S, 2010 WL 325934, at *4 (D. Me. Jan. 21, 2010) (same), <u>aff'd</u>, 2010 WL 716231 (D. Me. Feb. 24, 2010). The language of the Interstate AIE, drafted by the Defendant insurance company, states in plain terms that the named insured can contract in *a* writing to add as an additional insured to its policy "[a]ny person or organization for whom you are performing operations." Here it is undisputed that CCS was "performing operations" for Plaintiff. It is also undisputed that CCS agreed, in writing, that CCS would add Plaintiff, the general contractor, as an additional insured.[8] Under the plain meaning of the Interstate AIE, that is all that is required. That CCS entered into this written contract with Canatal, acting on behalf of Plaintiff, rather than Plaintiff itself, is immaterial.

In the Court's view, the Interstate's AIE's repeated use of the phrase "such person or organization" does not plainly restrict additional insured status only to those entities that have contracted directly with the named insured. For, "an ordinarily intelligent insured," without specialized training in law or insurance, would have no reason to read such language as

---

[8] Indeed, the Canatal/CCS Subcontract makes clear that documentation of this act would be required before CCS could start the job—a requirement that initially came from Plaintiff, the general contractor, in its own subcontract which contained the same requirement for Canatal.

mandating privity of contract. First Specialty Ins. Corp. v. Maine Coast Marine Constr., Inc., 532 F. Supp. 2d 188, 195-96 (D. Me. 2008) ("Language of an insurance contract is ambiguous only if it is reasonably susceptible to more than one plausible interpretation when measured from the viewpoint of an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.") (citations and internal quotation marks omitted). "[E]nforced as written," id., and without the addition of a phrase such as "with you," the Interstate AIE's language makes clear that Pro Con is an additional insured on the Interstate Policy secured by subcontractor CCS.[9]

The Court's reading of the Interstate AIE finds additional support in the fully-consistent language in the Certificate of Liability Insurance produced and signed by an agent for HRH Northern New England. This COI for the "Bowdoin College [hockey rink]"—which lists Plaintiff as the "Certificate Holder" and Defendant as one of the "Insurers Affording Coverage— specifically states that "Pro Con, Inc., Bowdoin College and Canatal Industries, Inc. are included as Additional Insured … ." (PageID # 84.) "Of course, a COI 'standing alone' is not sufficient evidence that the party is an additional insured, particularly where, as with this certificate, it states that it is 'a matter of information only and confers no rights upon the certificate holder.'" City of New York v. Philadelphia Indem. Ins. Co., No. 09 Civ. 7253(CM), 2010 WL 3069654, at *6 (S.D.N.Y. July 27, 2010) (citation omitted); see also Combined Mgmt. Inc. v. Reliance Nat'l Ins. Co., No. CV-96-101, 1996 Me. Super LEXIS 393, at *14-15 (Me. Super. Ct. Dec. 9, 1996)

---

[9] Even if the Court were to read the language of the Interstate AIE as susceptible to more than one meaning, under Maine law insurance policies are to be construed against their drafter, with exclusions and exceptions disfavored. See Bucci, 393 F.3d at 290 ("Maine requires that insurance policies be 'interpreted most strongly against the insurer.'") (citation omitted); Maine Mut. Fire Ins. Co. v. Am. Intern. Underwriters Ins. Co., 677 A.2d 1073, 1075 (Me. 1996) ("If there is any ambiguity in insurance policy language involving coverage, we construe that language in favor of the insured and against the insurer.") (citations omitted). If Defendant intended for their standard additional insured endorsement to require strict privity of contract, they could have done so in plain language. See Venable, 2010 WL 1817757, at *3. And, despite doing so elsewhere in the very same insurance policy, Defendant has not done so here. See Maine Drilling & Blasting, Inc. v. Ins. Co. of N. Am., 665 A.2d 671, 675 (Me. 1995) (an insurance contract must be evaluated as a whole).

("A general rule of insurance law states that 'a certificate of insurance is not a contract of insurance but is merely the evidence that a contract has been issued.'") (citations omitted). "But here the certificate is not 'standing alone;' it confirms what is already clear from the policy itself." <u>Philadelphia Indem. Ins. Co.</u>, 2010 WL 3069654, at *6; <u>see also, e.g.</u>, <u>Boseman v. Conn. Gen. Life Ins. Co.</u>, 301 U.S. 196, 203 (1937) (while a COI "is not part of the contract of, or necessary to, the insurance," it does serve "as evidence of the insurance"); <u>10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.</u>, 634 F.3d 112, 122 (2nd Cir. 2011) (same); <u>Sumitomo Marine & Fire Ins. v. S. Guar. Ins.</u>, 337 F. Supp. 2d 1339 (N.D. Ga. 2004).[10]

In short, Defendant's argument that Plaintiff was never added as an additional insured to CCS' policy is meritless. Plaintiff has met its burden of establishing that it was an additional insured to the Interstate Policy at issue here.

### 2. *Count I: Does Defendant have a duty to defend?*

The Court therefore turns to Defendant's secondary argument that its duty to defend Plaintiff was not triggered by the underlying Williams' litigation. Under Maine law, an insurer

---

[10] In its motion papers, Defendant asserts that the agent who issued this COI had no connection whatsoever to Defendant and, accordingly, had no authority—actual or apparent—to issue this COI on its behalf. (See Def.'s Opp'n Statement of Mat. Facts (Docket # 26) ¶¶12-13; Def.'s Reply Statement of Mat. Facts (Docket # 36) ¶¶12-13.) In arguing that the Court should therefore disregard the COI in its entirety, Defendant relies on the affidavit of Ron A. Blecker, "a claims representative for Defendant," who avers exactly what Defendant now argues: "HRH does not have actual or apparent authority to bind Interstate in any way regarding: 1) the issuance of the Policy, 2) the terms of the Policy, or 3) the issuance of insurance certificates, including the COI." (Mar. 1, 2011 Blecker Aff. (Docket # 26-1) at Page ID #s 1316-1317.) However, other than offering purely conclusory statements, Mr. Blecker has offered no basis for his knowledge. The affidavit contains nothing to suggest that Mr. Blecker had any direct involvement with, or other personal knowledge of, the Interstate Policy or the COI. (see id. at Page ID # 1316 ("I … have personal knowledge of Plaintiff[]'s claims… ."; see also Jan. 26, 2011 Blecker Aff. (Docket # 21-1) at Page ID # 620 (offering no additional insight as to Blecker's relationship with or knowledge of the specific contracts at issue here).) On the other hand, Defendant makes no argument that the COI does not constitute a business record created and kept in the course of a regularly conducted business activity. As such, the Court strikes the March 1, 2011 Blecker Affidavit (Docket #26-1) in its entirety. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").
   The final outcome of the case is in no way contingent upon the Court's decision to strike this affidavit. For, as stated, even in the absence of the COI, the Court has found that the plain language of the Interstate AIE establishes that Plaintiff was an additional insured on the Interstate Policy.

is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. Specifically, the Court "resolves the question of whether there exists a duty to defend by comparing the complaint with the terms of the insurance contract." Bucci, 393 F.3d at 290 (internal punctuation and quotation marks omitted) (describing Maine's "pleading comparison test").

"Under this comparison test, the insurer has a duty to defend if the underlying complaint discloses a '*potential* or a *possibility*' for liability within the policy's coverage." Id.; see also Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co., 373 A.2d 247 (Me. 1977) (if the allegations in the complaint raise any possibility that the claim might fall within the scope of coverage, then the insurer must defend).[11] As Maine law requires insurance policies to be read against the insurer, "[a]ny ambiguity must be resolved in favor of a duty to defend." Mass Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me. 1990); see also Bucci, 393 F.3d at 292 ("[G]iven the possible existence of *any legal or factual basis* for payment under a policy, an insurer's duty to defend should be decided summarily in favor of the insured.") (quoting Gibson, 673 A.2d at 1352).[12]

Turning first to the scope of the insurance coverage, the relevant provision of Interstate's AIE reads as follows:

> **Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
> 1. Your acts or omissions; or

---

[11] Maine law also makes "very clear" that the relevant facts for the Court to consider are the "facts as alleged" not the "facts as they actually are." Centennial Ins. Co. v. Patterson, 564 F.3d 46, 51 (1st Cir. 2009) (quotation omitted); see also Am. Policyholders' Ins. Co., 373 A.2d at 249 (same).

[12] "Significantly, the duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether there is a duty to indemnify." Bucci, 393 F.3d at 290 (quoting Commercial Union Ins. Co. v. Royal Ins. Co., 658 A.2d 1081, 1083 (Me. 1995)).

> 2. The acts or omissions of those acting on your behalf;
> In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Page ID # 355.)[13]  Defendant asks the Court to read this Interstate AIE as limiting coverage to additional insureds only to vicarious liability for bodily injury caused by CCS's own acts or omissions.  Thus, Defendant argues that because the underlying lawsuit involves Pro Con's own alleged negligence, they have no duty to defend here.  Plaintiff, not surprisingly, counters that the language of the AIE extends coverage to Pro Con under these circumstances.  More specifically, Plaintiff asserts that there is a duty to defend because the plain language of the Interstate AIE does not restrict coverage solely to Pro Con's vicarious liability for the acts or omissions of the named insured.

At the outset, the language of the Interstate AIE (as well as the Certificate of Liability Insurance) plainly requires that there be some connection between the operations on behalf of the Additional Insured (i.e., Pro Con) and the Named Insured (i.e., CCS).  The Williams Complaint establishes that Williams was performing work within the scope and course of his employment with CCS when he was injured at the Bowdoin College jobsite on December 5, 2007.  The Court therefore finds it to be clear that the potential liability of Pro Con arises out of the operations of CCS that were performed for Pro Con.  See, e.g., Wright-Ryan Constr., Inc., 2009 WL 4508443, at *6 (noting that Maine law provides that the phrase "arising out of" is "to be given an expansive reading when it appears in an insurance policy") (citation omitted).  This determination does not end the Court's inquiry, however.  For, the Court must still untangle what it means for a bodily injury to be "caused, in whole or in part, by" CCS's acts or omissions.

---

[13] Both parties agree that elsewhere in the Interstate Policy "You" is defined as the named insured shown in the declarations—i.e., CCS.

The Court has found no other decision within the First Circuit analyzing this precise language. However, as discussed by both parties, there are a number of cases within this Circuit that interpret variations of a standard additional insured endorsement in ways that are helpful to this Court's analysis. For example, in Merchants Insurance Company of New Hampshire, Inc. v. United States Fidelity & Guaranty Company, 143 F.3d 5 (1st Cir. 1998), the First Circuit interpreted an additional insured provision that provided coverage for a named additional insured "but only with respect to liability arising out of 'your work' for that [added] insured by or for you," where "your work" was defined as "[w]ork or operations performed by you or on your behalf." Id. at 7. The Merchants Court held that the provision included coverage for the additional insured's own negligence related to the work of the named insured. The Court reasoned:

> After all, if [the insurer] had really intended to limit coverage under the additional insured [e]ndorsement to those situations in which an added insured such as D'Agostino was to be held vicariously liable only for the negligence of a principal insured such as Great Eastern, [the insurer] was free to draft a policy with qualifying language that expressly implemented that intention. [The insurer] did not do so. Instead it used language requiring only that the general contractor's liability must arise out of Great Eastern's work. In view of the narrow construction to be given to ambiguous exclusionary provisions, this alternative analytical road leads to the same destination: [the insurer]'s obligation to bear half of the financial burden of Woundys' claims.

Id. at 10 (internal citation omitted).

Similarly, in the recent case of Wright-Ryan Construction, Inc. v. AIG Commercial Insurance Company of Canada, Civ. No. 08-414-P-H, 2009 WL 4508443 (D. Me. Nov. 27, 2009), Judge Rich construed policy language providing coverage for an additional insured only as to "liability arising out of the Named Insured's premises or operations." Id. at *5. In his analysis, Judge Rich differentiated this policy language from the "quite different" policy language in the earlier case of Boise Cascade Corporation v. Reliance National Indemnity

Company, 129 F. Supp. 2d 41 (D. Me. 2001), in which Judge Carter held that the additional insured was not entitled to coverage under the policy for injury arising solely out of its own omissions. In the Boise case, the insurance policy at issue specifically "limited" coverage for additional insureds "to their liability for the conduct of the named insured." Id. at 47. In Wright-Ryan, Judge Rich found that the "distinguishing language is crucial," and went on to recommend holding that the policy must be read as providing coverage to Wright-Ryan for its own negligence. 2009 WL 4508443, at *5 (citing Vitton Constr. Co. v. Pacific Ins. Co., 2 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2003) ("[T]he fact that an accident is not attributable to the name insured's negligence is *irrelevant* when the additional insured endorsement does not purport to allocate or restrict coverage according to fault.")).

In MacArthur v. O'Connor Corporation, 635 F. Supp. 2d 112 (D.R.I. 2009), on the other hand, the District Court of Rhode Island read an additional insured endorsement as excluding from coverage the additional insured's own negligence. The MacArthur case involved facts similar to those presented here: the plaintiff sued the general contractor when he was injured on a construction site while employed by the insured subcontractor, alleging that he fell on stairs negligently constructed by the general contractor. The general contractor sought a defense from the subcontractor's general liability insurer under an endorsement providing additional insured coverage "but only to the extent that such person or organization is liable for your acts or omissions [in connection with the named insured's ongoing operations for the additional insured]" or "[t]he acts or omissions of the additional insured(s) in connection with the general supervision of such operations." Id. at 115. In construing this endorsement, the MacArthur Court decided that the dispute "boils down to the meaning of the 'is liable for your acts or omissions' language ... of the additional insured endorsement," which it concluded plainly

meant vicarious liability only.  Id. at 116 (concluding that the additional insured "is only covered

in those instances when they are liable for the conduct of Berlin, their subordinate").

The precise language in the Interstate AIE differs from all of those discussed in these

other First Circuit cases.  As is the case here, the endorsement in Wright-Ryan limited coverage

to the additional insured for liability arising out of the operations of the named insured; but the

Wright-Ryan endorsement did not include the additional language contained in the Interstate AIE

that the bodily injury be caused "in whole or in part by" the acts or omissions of the named

insured or its employees/agents.  See Wright-Ryan Constr. Inc., 2009 WL 4508443, at *5.

Likewise, the endorsement discussed in MacArthur includes the same "your acts or omissions"

only language, but again, does not include the "in whole or in part by" language.  See

MacArthur, 635 F. Supp. 2d at 115.  Most significantly, just like the Merchants policy language

but unlike the Boise Cascade endorsement, there are no express terms in the Interstate AIE

explicitly excluding coverage for additional insureds in circumstances where the additional

insured is solely negligent.  Compare Merchants, 143 F.3d at 10 ("[I]f [the insurer] had really

intended to limit coverage under the additional insured Endorsement to those situations in which

an added insured … was to be held vicariously liable only for the negligence of a principal

insured … [the insurer] was free to draft a policy with qualifying language that expressly

implemented that intention.  [The insurer] did not do so.") (internal citation omitted) with Boise

Cascade Corp., 129 F. Supp. 2d at 48 ("Based on the certificate [providing that Boise was an

additional insured "but only with respect to liability arising out of the negligent acts or omissions

of the Name Insured],… in no event would Boise be entitled to coverage under the [insurance

policy] for bodily injury arising out of Boise's own acts or omissions.").[14]

---

[14] Once again, if Defendant intended for their standard additional insured endorsement to exclude from coverage the
Additional Insured's own alleged negligence, they could have done so in plain language.  Indeed, Defendant appears

Thus, the Court concludes that Defendant, by including the language "in whole or in part" in its AIE, specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured. Indeed, federal courts in other jurisdictions recently have interpreted additional insured endorsements with the same "in whole or in part" language in precisely this way. See, e.g., Gilbane Bldg. Co. v. Empire Steel Erectors, L.P., Civ. No. H-08-1707, 2010 WL 4791493, at *6-*7 (S.D. Tex. Nov. 16, 2010) ("The new … additional insured endorsement requires the injury to be 'caused, in whole or in part, by' the named insured in order for coverage to be triggered. Thus, in the absence of fault of the named insured, there should be no coverage for an additional insured. … The inference [in the underlying state petition] that Parr was at least partly at fault in causing his own injuries is sufficient to trigger the duty to defend under the Admiral policy."); Dale Corp. v. Cumberland Mut. Fire Ins. Co., Civ. No. 09-1115, 2010 WL 4909600, at *7 (E.D. Pa. Nov. 30, 2010) (finding that the allegations in the underlying complaint "did not trigger defendant's duty to defend because they do not in any way implicate Nesmith (the named insured), as required by the additional insured endorsement" requiring a showing that the injuries were caused "in whole or in part" by the named insured's negligence).[15]

---

to have done so elsewhere in the very same insurance policy. (See Interstate ICB 8016 at PageID # 1289 ("[T]he insurance afforded to any person or organization who has been added to this policy by an Automatic Status Additional Insured Endorsement is primary and noncontributory insurance, but only as respects 'bodily injury' or 'property damage' liability arising out of *your sole negligence* in performance of 'your work' after the effective date of this policy… .") (emphasis supplied).) See Maine Drilling & Blasting, Inc., 665 A.2d at 675 (an insurance contract must be evaluated as a whole).

[15] In its Motion for Summary Judgment and in its Opposition to Plaintiff's Motion for Summary Judgment, Defendant discusses at great length a judge's dissenting opinion in the case of Huber Engineered Woods, LLC v. Canal Insurance Company, 690 S.E.2d 739, 750-51 (N.C. Ct. of App. 2010) which was later relied upon by the North Carolina Supreme Court in overturning the Court of Appeals' decision, see 364 N.C. 413, 413 (2010). This case, which interprets and applies Maine law, presents different factual circumstances that those involved here and also does not involve the analysis of a similar additional insured endorsement. Therefore, the case has minimal relevance, if any, to the Court's analysis.

Here, the factual allegations in the underlying state court complaint include that Pro Con was the general contractor at the Bowdoin College jobsite; that Williams was working at the Bowdoin College jobsite on the day of the accident; and that Williams was injured when in the course of his work "he slipped and fell due to tarps covered with snow and the dangerous conditions at the Bowdoin College jobsite." (Williams' Compl. at Page ID # 8.) The Williams' Complaint does not discuss the fact, developed in this summary judgment record, that Pro Con installed these tarps; rather, it alleges only that Williams slipped because Pro Con "fail[ed] to adequately guard against … dangerous conditions" and was "negligen[t] in maintaining the premises in a safe and reasonable condition." (Compl. at PageID # 9.) See Am. Policyholders Ins. Co., 373 A.2d at 249 (noting that "the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations contained in the complaint in that action.") (citations omitted). As previously stated, these allegations clearly establish that the injury arose out of CCS's operations performed for Pro Con. From these allegations, there also is certainly the potential that facts might be developed at trial that would result in the fact finder determining that Williams' bodily injuries were caused, at least in part by, the acts or omissions of CCS (or its agents) in the performance of these operations. See, e.g., Gilbane Bldg. Co., 2010 WL 4791493, at *7; Gilbane Bldg. Co. v. Empire Steel Erectors, L.P., 691 F. Supp. 2d 712, 724 (S.D. Tex. 2010).

The insurer must defend if there is any possibility that its policy might provide coverage. As these allegations potentially implicate the named insured CCS, as required by the Interstate AIE, these allegations are sufficient to trigger Defendant's duty to defend. Thus, to the extent Plaintiff seeks a judgment declaring that Defendant has a duty to defend Plaintiff with respect to

the underlying state litigation, Plaintiff's Motion for Summary Judgment as to Count I is GRANTED and Defendant's Motion for Summary Judgment as to Count I is DENIED.[16]

3. *Count II: Is Plaintiff entitled to an award of damages for Defendant's failure to defend?*

Having found that Plaintiff is entitled to summary judgment on Count I, the Court is left to consider Count II, titled "Money Damages/Duty to Defend" in which Plaintiff seeks "[a]ll amounts including attorneys' fees, costs, and disbursement that Pro Con incurs" defending the Williams Complaint and prosecuting the present action. (Compl. at Page ID # 7.)

Perhaps understandably, Plaintiff has focused the bulk of its briefing on the fundamental disagreements regarding Interstate's duty to defend and, as a result, its Motion for Summary Judgment simply does not contain sufficient argument or undisputed facts to allow this Court to quantify any amount of money damages that might be awarded on Count II. Therefore, the Court simply cannot grant summary judgment in favor of Plaintiff on Count II. To the extent Plaintiff's Motion for Summary Judgment "requested that the court enter an order directing Interstate to reimburse Pro Con for all attorneys' fees and costs incurred to date in the defense of the Williams' matter" (Pl.'s Mot. for Summ. J. at PageID # 157), the Court DENIES the Motion.

Defendant's written submissions also seek summary judgment on Count II of Plaintiff's Complaint. In relevant part, Defendant argues that even if it has a duty to defend Pro Con, it is entitled to summary judgment on Count II because (1) the Interstate Policy provides only excess

---

[16] Having found there is a duty to defend, the Court declines to state an opinion as to whether there ultimately also will be a duty to indemnify in this case. Maine law makes clear that "[a]n insurer may not litigate its duty to indemnify until the liability of the insured has been determined. The duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether a duty to indemnify exists." Hanover Ins. Co. v. Crocker, 688 A.2d 928, 929 n.1 (Me. 1997) (internal citations omitted); see also Foremost Ins. Co. v. Levesque, 926 A.2d 1185, 1186 n. 1 (Me. 2007) (admonishing the insurance company for seeking a determination of its duty to indemnify while the underlying personal injury case was still pending).

coverage under the language of the ICB 8016 Endorsement and (2) Pro Con cannot establish that it has, in fact, incurred money damages. (See Def.'s Mot. for Summ. J. at PageID #s 595-97.)

With respect to the second argument, viewing the summary judgment record in the light most favorable to Plaintiff, there is minimal factual information regarding the timing of Canatal's assumption of Pro Con's defense in the Williams action. However, the summary judgment record is otherwise silent as to who has handled Pro Con's defense and what costs have been incurred by any party involved in the defense. In short, the current record does not provide an undisputed basis for finding that Pro Con has not incurred damages in the form of attorney's fees and costs as a result of Interstate's failure to defend.

In the Court's assessment, both of Defendant's arguments regarding Count II suggest that there is a "battle of the clauses" lurking in the background of the current summary judgment record. Carriers Ins. Co. v. Am. Policyholders' Ins. Co., 404 A.2d 216, 218 (Me. 1979). Under Maine law, such battles regarding primary and excess coverage are resolved by examining the various insurance policies "through which the respective insurers and insureds manifested their contractual intent."[17] See id. at 220; see also Phildelphia Indem. Ins. Co. v. Emp'rs Ins. Co., 703 F. Supp. 2d 41, 50 (D. Me. 2010) (applying Carriers). The summary judgment record does not include all of the relevant insurance policies covering Pro Con. Thus, the Court cannot compare the policies at issue and consider each "as a whole." Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 63 (1st Cir. 2010). In short, the Court cannot accept Interstate's invitation to declare a victor in any battle of the clauses on a record that is undeveloped and incomplete.

---

[17] To the extent that Plaintiff argues that the Interstate coverage is primary based solely on language found on the COI, that argument is without merit. See, e.g., SLA Prop. Mgmt. v. Angelina Cas. Co., 856 F.2d 69, 73 (8th Cir. 1988) (noting that "[t]he certificate is not part of the contract of, or necessary to, the insurance") (quoting Boseman, 301 U.S. at 203) (alterations omitted). In fact, the COI explicitly explains that it "confers no rights on the certification holder" and "does not amend, extend or alter the coverage afforded" by the Interstate Policy. (COI at PageID # 84.)

In short, to the extent either party has moved for summary judgment as to Count II, these motions are DENIED.

## IV.     CONCLUSION

For the reasons explained herein, Defendant's Motion for Summary Judgment (Docket # 20) is DENIED.  Plaintiff's Motion for Summary Judgment (Docket # 18) is GRANTED as to Count I but is DENIED as to Count II.

To the extent that Count II could be decided on a more developed paper record, the Court is open to deciding that matter on paper in lieu of a bench trial.  To the extent the parties wish to adopt this approach, they may discuss a procedure for such a written submission at the final pretrial conference.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 29th day of June, 2011.